# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRENT LARSON, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                  **NO. 25-1145**

**EARL STEVEN HAMRIC, ET AL.**              **SECTION: "G"(5)**

## ORDER AND REASONS

In this litigation Brent Larson and his wife Ashley Larson, individually and on behalf of their children (collectively, the "Plaintiffs") bring claims against Defendants Earl Steven Hamric and Evergreen Transport, LLC's (collectively, "Defendants") for damages allegedly sustained following a motor vehicle accident. Before the Court is Defendants' Motion to Exclude and for Imposition of Adverse Inference Due to Spoliation of Evidence.[1] Defendants move the Court to exclude, or alternatively impose an adverse inference regarding, any evidence at trial concerning Brent Larson's ("Larson") cervical spine surgery on June 2, 2025, on the grounds that Plaintiffs spoliated the evidence of Larson's pre-surgical condition by failing to allow Defendants the opportunity to obtain an Independent Medical Examination ("IME") before surgery was completed.[2] Plaintiffs oppose the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion. As there is a genuine dispute of material fact on the issue of whether the evidence was destroyed in bad faith, the Court will provide the jury with appropriate jury instructions to resolve the genuine disputes of material fact concerning spoliation.

---

[1] Rec. Doc. 15.

[2] *Id.* at 1.

[3] Rec. Doc. 18.

## I. Background

This lawsuit arises from a November 7, 2023 motor vehicle accident in Orleans Parish involving a vehicle driven by Larson and a vehicle owned by Defendant Evergreen Transport, LLC and operated by Defendant Earl Steven Hamric.[4] On September 27, 2024, Plaintiffs sent a demand letter to Defendant Evergreen Transport, LLC's insurer, which indicated Larson was being treated for spine injuries by an orthopedic specialist.[5] On October 17, 2024, Plaintiffs sent an updated demand letter to Defendant Evergreen Transport LLC's insurer indicating that Larson would need, at a minimum, ongoing pain management treatment.[6]

On November 4, 2024, Plaintiffs filed a petition in the Orleans Parish Civil District Court.[7] Plaintiffs claim that Larson sustained severe physical and emotional injury in the collision, and they are seeking damages for pain and suffering, medical expenses, loss of enjoyment of life, and other damages.[8]

On December 5, 2024, Defendants sent a letter to Plaintiffs requesting information regarding any surgical recommendations given to Larson and requesting to conduct an IME of Larson.[9] On February 4, 2025, Plaintiffs responded to Defendants' discovery request and stated that Larson "has not yet received a surgical recommendation nor other expensive or significantly invasive medical recommendation[.]"[10] On May 19, 2025, Plaintiffs emailed Defendants a letter

---

[4] Rec. Doc. 4-1 at 1–2.

[5] Rec. Doc. 18-1.

[6] Rec. Doc. 18-3.

[7] Rec. Doc. 4-1.

[8] Rec. Doc. 4-1.

[9] Rec. Doc. 18-5. This letter specifically stated that Defendants would pursue spoliation of evidence claims against Plaintiff if he failed to preserve the evidence of his condition.

[10] Rec. Doc. 18-7.

stating that Larson was scheduled for spinal surgery on June 6, 2025.[11] Notably, Defendants concede that the medical records attached to the May 19 letter indicated Larson was scheduled for surgery on June 2, 2025.[12] However, Defendants claim they were under the belief that the June 6 surgery date on the May 19 letter was the accurate date.[13] On June 4, 2025, Defendants contacted Plaintiffs and set a Rule 10.1 conference for June 11, 2025, to finalize the IME details.[14] On June 6, 2025, Defendants removed this action to this Court and reached out to Plaintiffs again in an attempt to schedule the IME.[15] Finally, on June 11, 2025, during the Rule 10.1 conference Defendants were informed that Larson had already proceeded with spinal surgery on June 2, 2025.[16]

On August 18, 2025, Defendants filed the instant Motion to Exclude.[17] Plaintiffs filed an opposition to the motion on September 4, 2025.[18] Defendants filed a reply brief on September 11, 2025.[19]

## II. Parties' Arguments

### A.    Defendants' Arguments in Support of the Motion to Exclude

Defendants argue that Plaintiffs spoliated evidence of Larson's pre-surgical condition by failing to allow Defendants the opportunity to obtain an independent medical examination before

---

[11] Rec. Doc. 18-11.

[12] Rec. Doc. 20 at 3.

[13] *Id.*

[14] Rec. Docs. 15-6, 15-1 at 3–4.

[15] Rec. Docs. 4; 15-1 at 4.

[16] Rec. Doc. 15-1 at 4.

[17] Rec. Doc. 15.

[18] Rec. Doc. 18.

[19] Rec. Doc. 20.

surgery was completed, despite Defendants' written requests to do so.[20] Defendants request that the Court sanction Plaintiffs by "excluding any evidence at trial regarding the C4-5, C5-6 and C6-7 Stryker cervical disc decompression surgery performed by Dr. David Wyatt on June 2, 2025 on Brent Larson[.]"[21] "In the alternative, Defendants request this Court impose an adverse inference regarding any surgical intervention for Brent Larson's alleged cervical spine injury and medical causation therefor, including but not limited to striking the customary presumptions under Housley and Wells from the jury form."[22]

Defendants contend that Plaintiff was obligated to preserve the relevant evidence of his pre-surgery condition and intentionally destroyed the evidence in bad faith.[23] Further, Defendants claim that Larson "undisputedly had exclusive control over that evidence" and that Larson "inarguably had an obligation to preserve his pre-surgery physical condition."[24] Defendants maintain that the letter sent to Plaintiffs on December 5, 2024 gave Plaintiffs notice of their duty to "thereafter to preserve evidence of [Larson's] pre-surgical condition, and of Defendants' requests for timely notice of any surgery recommended or scheduled and to conduct an IME prior to any such surgery."[25] However, Defendants argue Plaintiffs did not fulfill their duty to preserve the evidence of Larson's pre-surgical condition.[26] "Instead, with approval and coordination from

---

[20] Rec. Doc. 15 at 1.

[21] Rec. Doc. 15-1 at 1.

[22] *Id.* at 1–2.

[23] *Id.* at 9.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 10.

his attorneys' office, [Larson] underwent an elective cervical surgery on January 2, 2025[,] without affording Defendants their rightful opportunity to conduct an IME prior to the surgery."[27]

Defendants allege that they were irreversibly prejudiced by Plaintiffs' intentional spoliation of evidence.[28] Defendants state that Larson "placed his physical condition in controversy and Defendants were justly and legally entitled to conduct an IME prior to Mr. Larson undergoing any surgery on the very physical conditions he placed in controversy."[29] In support, Defendants contend that they may be exposed to a potentially large damage award, and evidence of Larson's pre-surgical condition was uniquely relevant to contesting this issue at trial.[30] Defendants assert that they are "substantially and irreversibly prejudice[ed]" because they are now precluded from ever conducting an IME of Larson's pre-surgical condition.[31]

Defendants aver that sanctions are warranted under Federal Rule of Civil Procedure 37 for the spoliation of evidence.[32] Defendants argue that "[c]ourts have long recognized the importance of a defendant's right to an IME, which should be enforced in this case by punishing Plaintiffs for their intentional bad faith conduct."[33] Further, Defendants assert that "courts have required an IME must occur prior to surgery to avoid spoliation of evidence."[34] Additionally, Defendants contend

---

[27] *Id.* at 10–11.

[28] *Id.* at 11.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 12.

[33] *Id.*

[34] *Id.* at 13 (citing *Magnolia Fleet, LLC v. Grey*, No. 18-8363, 2018 WL 5619995, at *3 (E.D. La. Oct. 30, 2018); *Gant v. Helix Energy Sols. Grp.*, No. 07-0618, 2007 WL 2316526, at *1 (W.D. La. Aug. 9, 2007)).

that the proportionate sanction here given the "intentional nature of proceeding with cervical surgery despite the multiple IME requests by Defendants" would be for the Court to:

> exclude any and all evidence concerning the cervical surgery, including but not limited to any surgical recommendation, the surgery itself, any post-surgical treatment, and any costs and expenses associated with the surgery. In the alternative, Defendants request this Court impose an adverse inference as to any evidence Plaintiff may seek to introduce a trial regarding the need for surgical intervention on his cervical spine and medical causation therefor.[35]

**B.    *Plaintiffs' Arguments in Opposition of the Motion to Exclude***

Plaintiffs oppose the motion, asserting they did not act in bad faith.[36] Plaintiffs argue Defendants have failed to offer evidence supporting their claims, cannot meet the burden of proof, and had notice that Larson suffered a serious disc injury on September 27, 2024, but failed to request a medical examination.[37] Additionally, Plaintiffs note that all of the relevant facts for this motion occurred before the removal of this case on June 5, 2025, and therefore state law should apply.[38] Further, Plaintiffs contend that Defendants improperly apply Rule 37 remedies to this case because it does not apply unless the Court has issued an order to compel, which has not occurred here.[39] However, to the extent that federal law does apply to this issue Plaintiffs assert that Rule 35 would control, which is equivalent to Louisiana Civil Code of Civil Procedure article 1464.[40]

---

[35] *Id.* at 14.

[36] Rec. Doc. 18 at 1.

[37] *Id.*

[38] *Id.* at 2.

[39] *Id.*

[40] *Id.*

6

Plaintiffs argue that Defendants could have, but failed to, move the state court to order a physical examination prior to surgery under article 1464.[41] Further, Plaintiffs aver that Defendants have offered no evidence showing that the disc material removed during the surgery deprived them of any defensive opportunity in this case or that, if preserved, the disc material would have been detrimental to Plaintiffs' case.[42] Plaintiffs assert that Defendants knew long before May 19, 2025, that surgery was a possibility because they knew that Larson suffered a serious cervical disc injury in this wreck, that conservative treatment was not effective, that he was referred to a spine surgeon, that he received increasingly invasive treatment over time, and that despite this care, his pain levels remained high.[43]

Plaintiffs cite *Collongues v. State Farm Insurance Co.*, to argue that, similar to the instant matter, "Defendant's failure to investigate [Larson's] condition and require an IME prior to surgery negates the notion that [Larson] intentionally destroyed evidence by undergoing surgery."[44] Moreover, Plaintiffs contend that Defendants merely made an informal request for an IME, which is insufficient to attach a duty to preserve the evidence.[45] Additionally, Plaintiffs point out that Defendants' IME request would be deficient under article 1464 because it did not specify the manner, conditions, or scope of the exam, nor did it specify who would be present during the exam or list any diagnostic testing to be performed during the exam.[46] Plaintiffs assert that they discussed

---

[41] *Id.*

[42] *Id.* at 5.

[43] *Id.* at 6.

[44] *Id.* at 6–7 (citing No. 09-3202, 2010 WL 103878, at *2 (E.D. La. Jan. 7, 2010).

[45] *Id.* at 8.

[46] *Id.* at 8.

with Defendants the IME request and identified the article 1464 deficiencies at least twice before June 2, 2025.[47]

### C.    *Defendants' Arguments in Further Support of the Motion to Exclude*

In reply, Defendants assert that federal law controls the disposition of this motion.[48] Defendants rely on Federal Rule of Civil Procedure 81(c)(1), which states "[t]hese rules apply to a civil action after it is removed from a state court."[49] Further, Defendants cite Rule 37(a)(1), which indicates a desire for parties to first confer in good faith to obtain discovery before seeking court action.[50] Additionally, Defendants argue that a prior court order is not a prerequisite for Plaintiffs to be found in bad faith for intentionally destroying evidence.[51]

Defendants contend that federal courts in Louisiana have consistently found bad faith sufficient to constitute spoliation of evidence when the plaintiff fails to appear for a requested IME, even without a prior court order.[52] Further, Defendants submit that Larson's surgery was an elective non-emergency surgery, and that two weeks was not enough notice to allow for an IME to occur.[53] Defendants point out that Plaintiffs were aware since the December 5, 2024 letter that Defendants wanted to conduct an IME on Larson if he was recommended to undergo surgery.[54] Additionally,

---

[47] *Id.* at 10.

[48] Rec. Doc. 20 at 1.

[49] *Id.*

[50] *Id.*

[51] Rec. Doc. 20 at 1.

[52] *Id.* at 1–2.

[53] *Id.* at 2.

[54] *Id.* at 2–3.

Defendants aver that Plaintiffs fail to provide any explanation for why the surgery could not have been briefly delayed to allow for the IME that was requested multiple times.[55]

### III. Legal Standard

#### A.    Applicable Law

In diversity suits courts must determine whether to apply state or federal law to the issue of spoliation.[56] "Generally, federal courts apply their own evidentiary rules in diversity matters."[57] Likewise, "[e]videntiary 'presumptions' which merely permit an adverse inference based on unproduced evidence are, likewise, controlled by federal law."[58]

#### B.    Spoliation and Remedies

A federal court has the inherent power to sanction a party who has abused the judicial process.[59] The spoliation of evidence is one such abuse.[60] Spoliation of evidence occurs when a party intentionally destroys relevant evidence.[61] Destroying or altering evidence, however, does not necessarily mean that the party has engaged in sanction-worthy spoliation. Instead, the Court must find: "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith."[62] The party

---

[55] *Id.* at 4.

[56] *See King v. Ill. Cent. R.R.*, 337 F.3d 550, 555–56 (5th Cir. 2003).

[57] *Id.* at 556.

[58] *Id.* (citing *Herbert v. Wal–Mart Stores, Inc.*, 911 F.2d 1044, 1047 (5th Cir. 1990)).

[59] *Chambers v. NASCO,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

[60] *Rimkus Consulting Group, Inc. v. Cammarata,* 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010).

[61] *Coastal Bridge Co., L.L.C. v. Heatec. Inc.*, 833 Fed. App'x 565, 573 (5th Cir. 2020).

[62] *Id.* at 574 (citing *Port of S. La. v. Tri-Parish Indus.*, 927 F. Supp. 2d 332, 346 (E.D. La. 2013); *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 190 (5th Cir. 2018)).

seeking the spoliation sanction bears the burden of proof.[63] In the context of spoliation, "bad faith is a question of fact like any other."[64] "If a genuine dispute of material fact exists as to bad faith, a jury should make that determination."[65]

## IV. Analysis

Plaintiffs argue that Louisiana state law should apply to the issue of spoliation because the facts under which the spoliation claim arose occurred prior to the removal of the matter to this Court. Defendants argue under Federal Rule of Civil Procedure 81(c)(1) that the federal rules should apply to the issue of spoliation. Because this is a procedural evidentiary issue raised after removal, the Court will apply federal law to analyze Defendants' spoliation claim.[66]

Defendants argue that Plaintiffs destroyed evidence of Larson's pre-surgical condition, which he was under a duty to preserve, by failing to allow Defendants the opportunity to obtain an independent medical examination before surgery was completed. Plaintiffs oppose the motion, asserting they did not act in bad faith by proceeding with Larson's surgery. Further, Plaintiffs argue that Defendants needed to move for the state court to order the IME as a prerequisite to attaching a duty for Plaintiffs to preserve Larson's pre-surgical condition.

The first element of the spoliation of evidence analysis is control over the evidence and an obligation to preserve it at the time of destruction.[67] There is no dispute that Larson had control over his body and the decision to alter his pre-surgical condition. Generally, the duty to preserve

---

[63] *Rimkus,* 688 F. Supp. 2d at 615–16.

[64] *Van Winkle v. Rogers,* 82 F.4th 370, 378 (5th Cir. 2023) (quoting *Bracey v. Grondin,* 712 F.3d 1012, 1019 (7th Cir. 2013)).

[65] *Id.*

[66] *See King,* 337 F.3d at 556.

[67] *Coastal Bridge Co.,* 833 Fed. App'x at 574.

arises when a party "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation."[68] Here, Plaintiffs filed suit to recover damages resulting from his alleged spine injuries which were sustained during the November 7, 2023, collision. Further, Plaintiffs were in receipt of Defendants' December 5, 2024, letter which requested an IME of Larson. Thus, Plaintiffs had notice and should have known that Larson's pre-surgical condition was evidence that would be used by Defendants. Accordingly, Plaintiffs had a duty to preserve Larson's pre-surgical condition.

The second element is whether the evidence was intentionally destroyed.[69] Courts have found that a plaintiff intentionally destroys evidence of his pre-surgical medical condition when a plaintiff undergoes surgery before submitting to an IME that was previously requested by a defendant.[70] Plaintiffs do not dispute that Defendants requested an IME before Larson's surgery. Accordingly, the second element is met.

The parties primarily dispute the third element, whether Plaintiffs destroyed the evidence in bad faith.[71] Defendants contend that federal courts in Louisiana have consistently found bad faith sufficient to constitute spoliation of evidence when the plaintiff fails to appear for a requested IME, even without a prior court order.[72]  Plaintiffs assert they did not act in bad faith simply because Defendants failed to act to secure the IME before Larson's surgery.[73]

---

[68] *Rimkus*, 688 F. Supp. 2d at 612.

[69] *Coastal Bridge Co.*, 833 Fed. App'x at 574.

[70] *Allen v. Resto*, No. 12-2242, 2013 WL 2152177, at *2 (E.D. La. May 16, 2013).

[71] *Coastal Bridge Co.*, 833 Fed. App'x at 574.

[72] Rec. Doc. 20 at 1–2.

[73] Rec. Doc. 18 at 1.

Defendants first requested an IME on December 5, 2024.[74] On February 4, 2025, Plaintiffs informed Defendants that Larson had not received a surgical recommendation.[75] On May 19, 2025, Plaintiffs emailed Defendants a letter stating that Larson was scheduled for spinal surgery on June 6, 2025.[76] This appears to be a typographical error as the medical records attached to the May 19 letter indicated Larson was scheduled for surgery on June 2, 2025.[77] On May 23, 2025, Defendants' counsel emailed Plaintiffs' counsel to provide ten appointment dates available for the IME.[78] On May 28, 2025, Defendants' counsel sent a follow up email to Plaintiffs' counsel.[79] Plaintiffs do not dispute these events, but they assert Plaintiffs' counsel was out of state on a family trip, and he attempted to reach Defendants' counsel when he returned on May 30, 2025.[80] Plaintiffs suggest that Defendants' counsel did not respond, and Larson proceeded to surgery three days later. This back-and-forth correspondence is not sufficient information to determine whether Plaintiffs acted in bad faith. In the context of spoliation, "bad faith is a question of fact like any other."[81] "If a genuine dispute of material fact exists as to bad faith, a jury should make that determination."[82]

Hence, the Court finds that there are disputed issues of fact regarding whether spoliation of Larson's pre-surgery condition occurred. Therefore, the Court will provide the jury with

---

[74] Rec. Doc. 18-5. This letter specifically stated that Defendants would pursue spoliation of evidence claims against Plaintiff if he failed to preserve the evidence of his condition.

[75] Rec. Doc. 18-7.

[76] Rec. Doc. 18-11.

[77] Rec. Doc. 20 at 3.

[78] Rec. Doc. 15-1 at 3; Rec. Doc. 18 at 8.

[79] Rec. Doc. 15-1 at 3; Rec. Doc. 18 at 8.

[80] Rec. Doc. 18 at 8.

[81] *Van Winkle*, 82 F.4th at 378.

[82] *Id.*

appropriate jury instructions to resolve the genuine disputes of material fact concerning spoliation.[83]

       Accordingly,

       **IT IS HEREBY ORDERED** that Defendants' Motion to Exclude and for Imposition of Adverse Inference Due to Spoliation of Evidence[84] is **DENIED**. The Court will provide the jury with appropriate jury instructions to resolve the genuine disputes of material fact concerning spoliation.

       **NEW ORLEANS, LOUISIANA,** this __6th__ day of November, 2025.

                    **NANNETTE JOLIVETTE BROWN**
                    **UNITED STATES DISTRICT JUDGE**

---

[83] *Id.*

[84] Rec. Doc. 15.